# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WERELDHAVE USA-<br>SAN ANTONIO, L.P.<br>    Plaintiff, | )<br>)<br>)<br>) |
| v. | )   Civil Case No. CCB-10-198 |
| PETER FILLAT ARCHITECTS, INC. | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION

Pending before the Court is Plaintiff, Wereldhave USA - San Antonio's, Motion for Temporary Restraining Order and Preliminary Injunctive Relief[1] (Doc. No. 2) against Defendant, Peter Fillat Architects, Inc., involving a contract dispute in a construction project. The Court conducted a telephonic conference with counsel for both parties on January 27, 2010. The parties were permitted time to fully brief their positions and the Court has considered the arguments asserted therein. For the reasons articulated below, the Court **DENIES** Plaintiff's Motion for Temporary Restraining Order.

## FACTUAL BACKGROUND

Wereldhave USA – San Antonio ("Plaintiff") is a Texas Corporation and is the owner and developer of a $400 million multiphase project ("Elian Project") currently being constructed in San Antonio, Texas. In June 2007, the Plaintiff engaged Peter Fillat Architects, Inc. ("Defendant"), a Maryland Corporation, to provide architectural services and plans, including construction drawings, for portions of the Elian Project. Apparently, the Defendant provided five proposals for each portion of the Elian Project that Defendant was hired to work on. Each of the proposals contained language that for each proposal that was executed, the parties would

---

[1] Although the Plaintiff's motion requested both a temporary restraining order and a preliminary injunction, this Memorandum Opinion will only address the request for a temporary restraining order.

subsequently enter into a standard architect agreement, called an AIA Agreement (B-141). The AIA referenced in the proposals has a specific provision relating to the Defendant's intellectual property and provides that:

> Upon execution of this Agreement, the Architect grants to the Owner [of the project] a nonexclusive license to reproduce the Architect's Instruments of Service solely for purposes of constructing, using and maintaining the Project, provided that the Owner shall comply with all obligations, including prompt payment of all sums when due, under this Agreement. . . . . *Any termination of this Agreement prior to completion of the Project shall terminate this license. Upon such termination, the Owner shall refrain from making further reproductions of Instruments of Service and shall return to the Architect within seven days of termination all originals and reproductions in the Owner's possession or control. If and upon the date the Architect is adjudged in default of this Agreement, the foregoing license shall be deemed terminated and replaced by a second, nonexclusive license permitting the Owner to authorize other similarly credentialed design professionals to reproduce and, where, permitted by law, to make changes, corrections or additions to the Instruments of Service solely for purposes of completing, using and maintaining the Project.* (emphasis added).

However, of the five proposals, only two are signed by the parties. In the two signed proposals, language referencing the AIA Agreement Form is stricken, and the proposals have notations that appear to substitute a mutually acceptable agreement for the standard AIA agreement.

Over the course of the parties' dealings, Plaintiff claims that it paid Defendant nearly 2.7 million dollars for the Defendant's architectural services. At some point thereafter, the parties then encountered several disputes, including whether the Defendant timely provided certain construction plans and drawings. In fact, Plaintiff terminated Defendant from the hotel portion of the project. In a letter dated January 30, 2009, the parties outlined a termination agreement for the hotel portion of the project in which Plaintiff agreed to pay Defendant $150,000 in return for the construction drawings of the hotel. Subsequent to this agreement, Plaintiff alleges that Defendant still caused further delays and other errors, namely failing to provide construction

documents in January 2010, which led Plaintiff to terminate Defendant from the entire project on January 11, 2010. Defendant argues that it was unable to complete the drawings in a timely fashion because of Plaintiff's delay in providing it with certain documentation. Defendant then refused to grant Plaintiff access to the construction drawings and plans claiming that Plaintiff still owed Defendant $491,000 for its services and that Plaintiff's termination of Defendant from the project terminated Plaintiff's license to the construction plans. Plaintiff represents to the Court that it offered to place the money Defendant claims it is owed into an escrow account, pending resolution of any litigation, in return for an immediate release of the drawings. Defendant, however, has refused to accept this offer or otherwise grant Plaintiff access to the drawing plans.

Plaintiff has filed a breach of contract action related to Defendant's failure to timely provide its services as agreed. Plaintiff claims that Defendant's breach resulted in increased costs and lost time and seeks $2 million in damages, as well as attorney's fees and costs. Plaintiff also seeks declaratory and injunctive relief that the parties' agreement requires Plaintiff to have access to the construction plans and drawings, even without Defendant's involvement on the project. The Plaintiff filed the pending temporary restraining motion and claimed that the entire construction project will be delayed, if not shut down, without the plans and will result in its inability to pay other contractors. Plaintiff's Temporary Restraining Order only seeks a release of the drawings and it has offered to place $491,000 as a surety bond for Defendant's potential claim.

**I.     Standard of Review**

As articulated in a recent Fourth Circuit case, "[a] preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief pendente lite of the type available after the trial." *Real Truth About Obama, Inc. v. Fed.*

*Election Comm'n*, 575 F.3d 342, 345 (4th Cir. 2009) (citations omitted).  Under the new standard for preliminary injunctions, the plaintiff must establish that "(1) he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest."  *Id.* at 346.  The Fourth Circuit, emphasized that this standard is more stringent than the prior standard and that plaintiffs must clearly show that they are likely to succeed on the merits and to suffer from irreparable harm before such an extraordinary relief for an injunction may be awarded.  *Id.* at 346-347.

### A. Likelihood of Success

Plaintiff argues that it will likely succeed on the merits of the case because the construction drawings were specifically requested for its project and it has already paid $2.7 million for the right to use those plans.  According to Plaintiff, the parties intended to provide Plaintiff with a license to use those plans in its construction project.  Plaintiff argues that the parties never agreed to include the standard AIA form as part of their agreement, which is made evident because the parties edited out references to the AIA form in its signed proposals.  Plaintiff contends that the parties never executed the remaining proposals that include references to the AIA Form.  Moreover, Plaintiff alleges that Defendant breached their agreement throughout their course of dealing causing Plaintiff's to terminate the Defendant on the hotel portion of the project in January 2009.  Finally, Plaintiff alleges that it terminated Defendant from the entire project after Defendant's continued delays, specifically after Defendant failed to provide documentation concerning the plans in early January 2010 as agreed.  Plaintiff argues that the parties termination agreement on the hotel portion of the project, in which the Plaintiff agreed to pay $150,000 in return for Defendant's release of the plans to the hotel, have no bearing on its right to retain its license with respect to the remaining portions of the project.

Lastly, Plaintiff argues that Defendant's reliance on *Nelson-Salabes v. Morningside Development, LLC*, is misplaced because that case dealt with a copyright infringement suit against a third party who did not have a contractual relationship with the architect.

Defendant contends that the parties did not intend to create an agreement that would permit Plaintiff to continue using Defendant's intellectual property after Defendant was no longer involved with the project. Defendant argues that an analysis of the three factor test outlined in *Nelson-Salabes v. Morningside Dev., LLC*, will show that the parties do not have an implied nonexclusive license with respect to the construction drawings. 284 F.3d 505, 516 (4th Cir. 2002) (explaining that implied nonexclusive license exits where (1) the parties engaged "in a short-term discreet transaction as opposed to an ongoing relationship"; (2) the architect used a written contract, such as a standard AIA, which provides that the copyrighted materials could not be used without the architect's involvement in project or without express permission; and (3) the parties conduct "during the creation or delivery of the copyrighted materials" shows that the parties permitted continued use of the materials after the architect was no longer involved and without his consent).

Defendant argues that the parties intended to engage in an ongoing relationship. Second, Defendant points out that every proposal submitted in this project referenced its standard AIA agreement, which includes provisions for the return of its copyrighted materials if the architect is terminated, notwithstanding that not every proposal was signed or that the signed proposals struck out references to the AIA. Lastly, Defendant argues that the parties prior agreement concerning Defendant's termination from the hotel portion of the project, in which Plaintiff agreed to pay Defendant $150,000 in return for the continued use of the copyrighted materials, shows that Defendant's conduct indicates that it never intended for its works to be used without

its involvement on the project and without its consent. In any event, Defendant argues that Plaintiff caused Defendant's delay in completing the documents due in early January 2010 because Plaintiff failed to pay the mechanical engineer who then refused to release necessary drawings to Defendant without such payment. Defendant asserts that Plaintiff has not yet paid $491,000 in service fees, and that if Plaintiff uses its architectural plans, it will likely have a copyright infringement claim. Thus, Defendant argues that Plaintiff has not shown that it will likely succeed on the merits.

### B. Irreparable Harm

Plaintiff claims that it will suffer irreparable harm without the temporary restraining order because portions of the project cannot continue without the plans and will result in other contractors, subcontractors, and suppliers not being paid. Defendant contends that any harm suffered by Plaintiff results because of Plaintiff's failure to fulfill its contractual responsibility, and because Plaintiff abruptly terminated the Defendant.

### C. Balance of the Equities

Plaintiff argues that Defendant will suffer no harm because it has already paid Defendant $2.7 million for the right to use the plans and is willing to post $491,000 as a bond to secure Defendant's claim to the disputed fees. Defendant argues that in addition to the disputed fees that it will be harmed if Plaintiff is permitted to infringe its copyrighted works. In the absence of more factual development, the Court notes that this factor appears to be neutral at this time.

### D. Public Interest

Plaintiff also represents that this project involves numerous other contractors, vendors, and their employees who are relying on this project for their livelihood. Plaintiff claims that further delay on the project will jeopardize the entire project and all those involved. Plaintiff argues that Defendant's copyright infringement claims can be properly addressed in subsequent

litigation.  Defendant contends that the public interest favors upholding individual's intellectual property.  The Court finds that both parties have presented compelling public interest arguments and thus this factor is also neutral.

### E.  The Court's Position on the Temporary Restraining Order

The Court is reminded that injunctive relief is an extraordinary remedy that it cannot grant without a clear showing that Plaintiff will likely succeed on the merits of its case or will suffer irreparable harm without the relief requested.  Moreover, as the Fourth Circuit explained, "while a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held . . . ."  *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999).

The Court notes that the parties present compelling arguments relative to the Plaintiff's likelihood of success on its breach of contract claim and without the benefit of the more exacting evaluation of the parties' evidence of the breach of contract issue and the implied nonexclusive license argument; the Court finds the likelihood of success factor to be a close call.  Moreover, the Court is not yet able to clearly ascertain the current status of the overall construction project which would enable the Court to determine whether the Plaintiff's harm was so urgent that the matter could not wait until a more detailed presentation of the evidence during a preliminary hearing.  The Court's reservations should not be taken as an indication that Plaintiff is or is not entitled to a preliminary injunction, only that the Court believes that a preliminary hearing will better enable it to determine whether Plaintiff's preliminary injunctive relief should be granted.

**CONCLUSION**

For the reasons articulated above, the Court **DENIES** Plaintiff's Motion for a Temporary Restraining Order (Doc. No. 2). An Order shall follow this Memorandum Opinion.[2]

January 29, 2010 /s/
Date Alexander Williams, Jr.
United States District Court Judge

---

[2] The Court notes that although this case is assigned to Judge Blake in the Northern Division of the United States District Court for the District of Maryland, the case may be reassigned to Judge Williams who handled the temporary restraining matter.